UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| IRENE R.,<br><br>                  Plaintiff,<br>     v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | Case No. 3:24-cv-05605-TLF<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 2. Plaintiff challenges the Administrative Law Judge's ("ALJ") decision finding that plaintiff was not disabled. Dkt. 5 Complaint.

On March 29, 2022, plaintiff filed applications for SSI and DIB, alleging a disability onset date of September 30, 2019. AR 193-202, 203-207. The claims were denied initially and upon reconsideration. On September 12, 2023, a hearing was conducted by ALJ Margret Sullivan. AR 42-57. The ALJ issued a decision on December 19, 2023, finding plaintiff not disabled. AR 15-34. The Appeals Council denied the request for review (AR 1) and plaintiff filed this appeal.

The ALJ determined plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, migraines, anxiety, and depression. AR 20. The ALJ determined plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except plaintiff "must have simple instructions only; must have only occasional contact with the public and coworkers; and must not be required to work at heights or near hazardous machinery." AR 24. The ALJ determined plaintiff could perform the requirements of representative occupations such as document preparer (DOT 249.587-018, sedentary; SVP 2); escort vehicle preparer (DOT 919.663-022, sedentary; SVP2); addresser (DOT 209.587-010, sedentary; SVP 2). AR 33.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

DISCUSSION

**1. Plaintiff's statements about symptoms and limitations**

Plaintiff challenges the ALJ's evaluation of her statements regarding symptoms and limitations relating to her physical impairments. Dkt. 9 at 2-12

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Plaintiff completed a function report on February 6, 2022 (AR 237-44) and wrote that she is unable to look at a monitor for more than 30 minutes without triggering a migraine, she has a difficulty driving because of migraines and light sensitivity, she cannot focus or remember things because of fibromyalgia, brain fog, and migraines; she is always exhausted, has very little motivation, and is afraid to be around people she does not live with. AR 237.

Plaintiff reported that she prepares meals that take 30 minutes or less (with help), and she can do laundry, some sweeping, and general tidying and light cleaning. AR 239. She wrote that she tries to go on at least a short walk every day. AR 240. Her hobbies are reading, watching tv, playing video games, hiking, sewing felt characters,

cooking, baking, and swimming. AR 241. She indicated that her conditions impact all functional areas and wrote that she can walk for about 15 minutes at a time before she needs to rest for 45 seconds to a few minutes. AR 242.

At the hearing, plaintiff testified that in 2019 she left her role as a bank teller because her pain levels were extremely high – she stated that she was dealing with severe migraines every day and her depression was getting very bad. AR 48.

She testified that, on an average day, she wakes between 9:00 am and 10:30 am, her mom makes her breakfast and if they are going grocery shopping everything is planned out carefully, if not then she takes it easy at home. *Id*. She watches television, tries to read, and might help with something simple for dinner. AR 49. She tries to keep herself relaxed and goes to bed between midnight and 1:30 am. *Id*.

Plaintiff testified that she experiences daily pain in her neck, her joints, all down her back, her hips, and her skin. AR 51-52. She uses a wheelchair when she leaves the house if she goes to a place there would be a lot of walking, although she doesn't really go places. AR 52. She testified her conditions have worsened, causing more pain and a worsened memory. *Id*. She experiences chronic suicidal ideations and feeling down all the time due to her treatment-resistant depression. *Id*.

As for chores, plaintiff stated she does two loads of laundry a week, she will help with dishes if she can tolerate it, and she will cook simple meals with assistance a few times a week, including help with chopping and preparing ingredients and bending and reaching. AR 53. She stated that 10-12 days a month her migraine is so bad she lays in bed. *Id*.

The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and her activities of daily living. AR 26.

### a. Medical record

The ALJ summarized the treatment record and concluded that plaintiff's testimony was inconsistent with the level of treatment and reports of improvement. AR 26-30.

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment considering the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

The ALJ discounted plaintiff's testimony about physical symptoms because these symptoms were effectively managed with chiropractic treatment, recreational marijuana, diet, medication. AR 26-29.

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec.*

5

*Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Evidence of such effective treatment can be a clear and convincing reason for discounting plaintiff's subjective testimony. *See Kitchens v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023).

The ALJ reasoned that plaintiff's symptoms and limitations improved with medication. On January 20, 2020, Dr. Stevenson wrote that plaintiff previously reported only five migraines in two months with Emgality; however, at the appointment she reported over the past two to three months her migraines occurred up to 15 days per month. AR 1256. On January 17, 2022, Dr. Stevenson wrote that plaintiff reported good relief with Ubrelvy within 45 minutes of an attack starting but she often requires a second dose; she reported Emgality works as prophylaxis. AR 1351. On April 26, 2022, plaintiff presented to the emergency department for a headache that she described as worse than her daily headaches, but not the worst she ever had. AR 1366.

On July 18, 2022, Dr. Stevenson noted plaintiff reported three to four migraines per month and she had no issues with Emgality. AR 1931. On November 15, 2022, Dr. Judish noted that gabapentin improved her pain level and energy. AR 2315. He noted that she was managing her fibromyalgia symptoms reasonably well. *Id*. On January 19, 2023, Dr. Stevenson wrote that plaintiff had experienced improvement in headaches over the past two weeks, but it had been much worse before that period. AR 2358. Plaintiff did not think Ubrelvy was as effective as it used to be and felt that Emgality helped more with the intensity than the frequency of her migraines. *Id*.

On April 20, 2023, plaintiff reported improvement with Nurtec, and she found excellent relief with Cambria. AR 2362. She reported morning headaches which Dr. Stevenson wrote could be a sign of untreated obstructive sleep apnea and placed an

1  order for a sleep study. AR 2361. On May 31, 2023, a sleep study was conducted and
2  on June 9, 2023, Dr. Mebust diagnosed her with mild sleep apnea. AR 2369-72. On
3  August 21, 2023, plaintiff reported she was doing relatively well; she had four to five
4  headaches per month, but they were less intense than they used to be; her morning
5  headaches improved with use of CPAP; Cambria worked well as an abortive agent
6  without side effects. AR 2417.

7        Here the ALJ thoroughly summarized the treatment record and considered
8  evidence of improvement and worsening in plaintiff's symptoms. "Where evidence is
9  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must
10 be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Because the ALJ
11 offered valid reasons, supported by substantial evidence for discounting plaintiff's
12 testimony, any errors in any of the other reasons the ALJ gave for discounting the
13 plaintiff's statements relating to migraines would be harmless. *Carmickle v. Comm'r of*
14 *Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (error is harmless if "the ALJ's
15 decision remains legally valid, despite such error.").

16       Plaintiff argues that even if plaintiff were not having migraines daily, the ALJ was
17 still required to address in the RFC the instances when plaintiff was experiencing them
18 or explain why migraines were not included in the limitations. Dkt. 15 at 4. Plaintiff does
19 not point to any medical evidence defining the frequency of her migraines or any
20 medical opinion that opines specific functional limitations related to the migraines; the
21 ALJ was not required to incorporate symptoms or limitations unless they are supported
22 by the evidence; the ALJ properly discounted plaintiff's testimony and plaintiff does not
23 show there was evidence to support adding migraine-related limitations to the RFC. The
24
25

7

ALJ is "responsible for translating and incorporating clinical findings into a sufficient RFC." *Rounds v. Comm'r of Soc. Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015).

Plaintiff argues that the ALJ failed to take into consideration the treatment options available to plaintiff in concluding that her treatment was conservative, particularly with respect to the treatment options available for fibromyalgia. Dkt. 9 at 7. The ALJ cited several failures to follow through on treatments. At one point plaintiff was given a referral to rheumatology and did not follow through. AR 27 (citing 804-08). At another point she was a week late for her Emgality injection and rarely took her prescribed indomethacin. AR 26 (citing AR 1256, 1257). She also did not return for trigger point injections recommended by her neurologist, Dr. Kang. AR 28 (citing 1300-02, 1321-26).

An ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Plaintiff reported that she was a late to her injections due to pharmacy issues (*see* AR 1256) which the ALJ did not appear to consider. She also reported that indomethacin was minimally effective.

There does not appear to be an explanation for the lack of follow up with rheumatology. Although ARNP Erika Gilson noted on June 13, 2019, that plaintiff was stressed because she showed up to her rheumatology appointment to find a sign on the door stating that the office was closed for a week (AR 862), on November 18, 2020, ARNP Gilson noted that plaintiff was recommended to follow up with rheumatologist but had not seen rheumatology in over a year (AR 810). There also does not appear to be an explanation as to why plaintiff did not follow through with trigger point injections. This was a proper reason for discrediting plaintiff's testimony.

The ALJ further discredited plaintiff's testimony on the basis that her symptoms were well controlled with treatment compliance and dietary changes. AR 29. As for diet, the ALJ noted that plaintiff reported her symptoms improved when she was following the autoimmune protocol diet and when she reported worsening fibromyalgia symptoms, she attributed it in part to the foods she was eating. *Id* (citing AR 1714-16, 1743). The record does not support this conclusion; the note cited by the ALJ states: "[s]he noted improved mood and diminished pain when she was doing the autoimmune protocol." AR 1714. The ALJ cited a second note which states, "[f]ibromyalgia symptoms a little worse last couple of weeks, which she attributes in part to foods she's been eating." AR 1743. However, both notes were from medication management appointments for plaintiff's psychiatric medication and there is no indication about the diet that showed any sustained improvement, or any more detailed information about the diet.

The ALJ cited notes from plaintiff's chiropractor that plaintiff's symptoms improved with treatment. AR 26. However, this does not reflect the totality of the record. While plaintiff occasionally reported good relief following treatment (AR 2326) or that her condition was the same or similar as her last visit (AR 1149, 2330, 2466, 2543), she also regularly reported that there was improvement following treatment followed by regression with return of increased restriction, muscle tension, and irritation (AR 1171, 1184, 1190, 1193, 1208, 1220, 1236, 2429, 2441, 2466). Her condition was also noted to have regressed or been aggravated at points (AR 1188, 1211, 2324). She reported that she felt her condition had improved 40 percent with treatment but then plateaued at that level. AR 1174, 1203. This evidence does not support the ALJ's conclusion that her symptoms were effectively controlled.

With respect to her use of marijuana, the ALJ points to a provider note from December 4, 2019, that states "[f]ibromyalgia controlled with nightly recreational marijuana – discussed attempt to reduce marijuana use." AR 366. The defendant points to several other points in the record that plaintiff used marijuana to treat her symptoms and reported relief. Dkt. 14 at 7-8. On December 11, 2019, plaintiff reported using marijuana for fibromyalgia pain. AR 1384. On January 13, 2021, plaintiff noted that marijuana helps her through the pain. AR 763.

The notes from December 4, 2019, are from a visit to behavioral health when plaintiff was admitted for anxiety and depression related to fibromyalgia. AR 416. She reported smoking marijuana daily for pain and stated it provided two hours of relief. AR 417. On January 13, 2019, she had a mental health follow up where she reported she had decreased her marijuana use. AR 834. On July 14, 2020, she reported she carefully uses marijuana for pain to avoid increase in anxiety. AR 1461. There is not substantial evidence that marijuana provided any type of improvement except for temporary relief.

The ALJ also found plaintiff's physical allegations were inconsistent with evidence that plaintiff retained strength in all extremities, walked normally, had negative cervical compression, cervical distraction, straight leg raises, and Kemp's tests; she had negative provocative and impingement testing, her spine was not tender to palpitation; unremarkable examination findings, EKG and head CT results. AR 26-29. The ALJ specifically cited largely unremarkable exams as a reason for not finding further limitations than included in the RFC. AR 29 (citing 1299-1302, 1862, 1870, 1980-1982).

This evidence is not inconsistent with plaintiff's testimony of severe, chronic pain caused by her fibromyalgia. "[T]hose suffering from [fibromyalgia] have muscle strength,

1   sensory functions, and reflexes that are normal." *Revels v. Berryhill,* 874 F.3d 648, 655

2   (9th Cir. 2017) (quotation omitted). Examinations finding no limitations in a claimant's

3   range of motion and negative straight leg tests are not inconsistent with chronic pain

4   from fibromyalgia. *Id.* at 660, 663. Nor are unremarkable imagining studies, as persons

5   with fibromyalgia typically have normal musculoskeletal testing results. *See id.* at 656.

6       Because the ALJ offered valid reasons, supported by substantial evidence for

7   discounting plaintiff's testimony due to failure to follow through with prescribed

8   treatment, any errors in any of the other reasons the ALJ gave for discounting the

9   plaintiff's statements relating to fibromyalgia would be harmless. *Carmickle v. Comm'r of*

10  *Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (error is harmless if "the ALJ's

11  decision remains legally valid, despite such error.").

12      **b.  Daily activities**

13      The ALJ found plaintiff's daily activities to be inconsistent with her testimony. AR

14  26. An ALJ may discount a claimant's testimony based on daily activities that either

15  contradict their testimony or that meet the threshold for transferable work skills. *Orn v.*

16  *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ found "[d]espite her allegations, she

17  can prepare simple meals and do light household chores such as dishes and laundry.

18  She plays video games and sews . . . She walks three miles a day with her parents and

19  uses a weighted hula hoop regularly." AR 26.

20      There is not substantial evidence in the record to establish that plaintiff's

21  activities undermined her physical symptom testimony. While the defendant explains

22  how each activity listed by the ALJ contradicted specific elements of plaintiff's

testimony, the ALJ did not clearly link the testimony to these activities. *See* Dkt. 14 at 5-6.

An alleged inconsistency that does not have support in the record would include, for example, where the ALJ discussed plaintiff's mother's statement that sometimes plaintiff prepares her own food such as a sandwich or uses an electric instant pot and toaster oven. AR 301. She does laundry for one to two hours a week with encouragement and sometimes help with folding. *Id*. She watches television and plays video games daily, she reads and crafts occasionally. AR 303. She can walk for one mile before she needs to stop and rest. AR 303. On a three mile walk she will need to stop four times and continue. *Id*. The evidence cited by the ALJ does not conflict with plaintiff's testimony on the function report or at the hearing, because there is no indication of how long plaintiff watched tv or played video games per day. It is therefore unclear whether this was inconsistent with her testimony that she could not look at a screen for more than 30 minutes at a time without triggering a migraine.

The ALJ discusses several points in the record where plaintiff states that she has been taking daily walks with her mom. AR 26 (citing AR 1705, 1710, 1809, 1887). However, this appears to be the same note reprinted multiple times as a part of a summary on progress toward treatment goals in her mental health record; all of these notes are identical and restate "[c]ompleted 1/31/2021." This is also not contradictory to her testimony; she indicated in her function report that she tries to walk every day. *See* AR 240.

The ALJ also cites a July 25, 2022 provider note that "[s]he's been walking with mom daily and started using weighted hula hoop." AR 1891. On August 23, 2022, it was

noted by a provider that "[s]he walks 3 miles a day and does a hula hoop for 48 minutes daily." AR 1868. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (with respect to exercise activities like walking and exercising, "a patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite her pain or could engage in similar activities for a longer period given the pain involved").

Therefore, there is not substantial evidence to support a conclusion that plaintiff's testimony was inconsistent with the cited activities.

Because the ALJ offered valid reasons, supported by substantial evidence for discounting plaintiff's testimony due to failure to follow through with prescribed treatment, any errors in the other reasons the ALJ gave for discounting the plaintiff's statements relating to fibromyalgia, or migraines, would be harmless. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (error is harmless if "the ALJ's decision remains legally valid, despite such error.").

**2. Lay witness evidence**

Plaintiff argues that the ALJ erred in not addressing the Function Report submitted by plaintiff's mother. Dkt. 9 at 12-14

For cases filed prior to March 27, 2017, the Court would uphold the ALJ's decision to discount the opinion of a non-acceptable medical source, such as a friend or a family member, if the ALJ provided "reasons germane to each witness for doing so." *Turner v. Commissioner of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. § 404.1502.

For applications filed on or after March 27, 2017, such as this one, an ALJ is "not required to articulate" how they evaluated evidence from non-medical sources such as educational personnel, public and private social welfare agency personnel, and other lay witnesses. 20 C.F.R. § 404.1502(e).

On September 24, 2022, plaintiff's mother completed a third-party function report. AR 299-306. She wrote that plaintiff can't drive, has limited concentration, her migraines prevent her from using a computer for more than 15-minutes at a time, she is easily exhausted and if they go for a walk, she cannot do anything for some time. AR 300. She wrote that plaintiff struggles to get more than three hours of sleep a night and pain causes an issue trying to get into a comfortable position. AR 300.

She stated plaintiff will sometimes make a sandwich or use an electric instant pot and toaster oven; she does laundry for an hour one to two times per week. AR 301. She stated plaintiff helps in the garden and goes outside four to five days per week. AR 302. Plaintiff goes shopping two to three times per week. *Id*. She wrote that plaintiff watches television and plays video games daily, reads and crafts occasionally although her brain fog makes it hard for her to do anything for a long stretch of time. AR 303. She wrote that plaintiff cannot do much of anything between her migraines and fibromyalgia and nearly all functional areas are affected. AR 304.

The ALJ determined that the information discussed in plaintiff's mother's adult function report is generally consistent with plaintiff's allegations. AR 25. The report does not detail any limitations beyond what plaintiff described in her own report and testimony. Because the ALJ discounted plaintiff's statements about symptoms and limitations, and plaintiff's statements were similar to the statements in her mother's adult

function report, any error in evaluating the lay witness report would be harmless. See Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (finding no error where lay witnesses' testimony did not describe any limitations beyond those the plaintiff described, and the ALJ had reasonably discounted plaintiff's testimony).

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ properly determined plaintiff to be not disabled. Therefore, the ALJ's decision is <u>affirmed</u>.

Dated this 23rd day of May, 2025.

Theresa L. Fricke
United States Magistrate Judge